**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Sean F. Cox |
| IN RE: AUTOMOTIVE HOSES CASES | |
| THIS DOCUMENT RELATES TO:<br>DIRECT PURCHASER ACTIONS | 2:15-cv-03201-SFC-RSW<br>2:16-cv-10001-SFC-RSW<br>2:18-cv-12711-SFC-RSW |

**DIRECT PURCHASER PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES, AND A SERVICE AWARD TO THE CLASS REPRESENTATIVE**

Pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, VITEC, L.L.C. ("Plaintiff") moves the Court for an award of attorneys' fees, litigation costs and expenses, and a service award to the class representative from the proceeds of the settlements reached with Defendants Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., TG Missouri Corp., Sumitomo Riko Company Limited, Sumitomo Riko America, Inc., and SumiRiko Tennessee, Inc. The settlements total $8,455,555. The grounds supporting this motion are set forth in the accompanying memorandum of law.

Dated: December 7, 2020

Respectfully submitted,

/s/ David H. Fink

David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

Interim Liaison Counsel for the Direct Purchaser Plaintiff

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
& MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
& PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street
Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300

Interim Co-Lead and Settlement Class Counsel for the Direct Purchaser Plaintiffs

# TABLE OF CONTENTS


STATEMENT OF ISSUES PRESENTED ..... ii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ..... iii

TABLE OF AUTHORITIES ..... iv

I. INTRODUCTION ..... 1

II. BACKGROUND AND SUMMARY OF WORK PERFORMED TO DATE ..... 1

III. CLASS NOTICE ..... 2

IV. THE WORK PLAINTIFF'S COUNSEL PERFORMED FOR THE BENEFIT OF THE SETTLEMENT CLASSES ..... 3

V. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE ..... 4

A. THE PERCENTAGE-OF-THE-RECOVERY METHOD PREVIOUSLY EMPLOYED BY THE COURT IN THIS MDL IS APPROPRIATE FOR ASSESSING THE FEE REQUEST. ..... 4

B. THE REQUESTED FEE CONSTITUTES A FAIR AND REASONABLE PERCENTAGE OF THE SETTLEMENT FUNDS. ..... 5

C. THE FACTORS IDENTIFIED BY THE SIXTH CIRCUIT SUPPORT THE REQUESTED FEE. ..... 7

1. PLAINTIFF'S COUNSEL OBTAINED A VALUABLE BENEFIT FOR THE CLASSES. ..... 8

2. THE VALUE OF THE SERVICES ON AN HOURLY BASIS CONFIRMS THAT THE REQUESTED FEE IS REASONABLE. ..... 8

3. THE REQUESTED FEE IS FAIR AND REASONABLE GIVEN THE REAL RISK THAT COUNSEL COULD HAVE RECEIVED NO COMPENSATION FOR THEIR EFFORTS. ..... 10

4. SOCIETY HAS AN IMPORTANT STAKE IN THIS LAWSUIT AND IN AN AWARD OF REASONABLE ATTORNEYS' FEES. ..... 10

5. THE COMPLEXITY OF THIS CASE SUPPORTS THE REQUESTED FEE. ..... 11

6. SKILL AND EXPERIENCE OF COUNSEL ..... 11

VI. THE COURT SHOULD AUTHORIZE INTERIM LEAD COUNSEL TO DETERMINE FEE ALLOCATIONS. ..... 12

VII. REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES INCURRED IN THE PROSECUTION OF THIS LITIGATION ..... 14

VIII. A SERVICE AWARD TO THE CLASS REPRESENTATIVE IS APPROPRIATE. ..... 14

IX. CONCLUSION ..... 16

## STATEMENT OF ISSUES PRESENTED

1. Should the Court award Plaintiff's counsel attorneys' fees of 30% of the Toyoda Gosei and Sumitomo Riko settlement funds?

   Suggested Answer: Yes.

2. Should the Court award Plaintiff's counsel litigation costs and expenses from the settlement funds?

   Suggested Answer: Yes.

3. Should the Court award the class representative, VITEC, L.L.C. a service award of $25,000?

   Suggested Answer: Yes.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23(h)

Fed. R. Civ. P. 54(d)

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996)

*Rawlings v. Prudential-Bache Properties, Inc.*,
9 F.3d 513 (6th Cir. 1993)

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) .......... 12

*Bessey v. Packerland Plainwell, Inc.*,
2007 WL 3173972 (W.D. Mich. 2007) .......... 6

*Bowling v. Pfizer, Inc.*,
102 F.3d 777 (6th Cir. 1996) .......... 8

*Gascho v. Global Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) .......... 4

*Godshall v. Franklin Mint Co.*,
2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) .......... 7

*Hadix v. Johnson*,
322 F.3d 895 (6th Cir. 2003) .......... 14

*Heekin v. Anthem, Inc.*,
2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .......... 7

*Hillson v. Kelly Servs. Inc.*,
2017 WL 279814 (E.D. Mich. 2017) .......... 15

*In re AremisSoft Corp., Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) .......... 7

*In re Automotive Parts Antitrust Litig.*,
2016 WL 8201516 (E.D. Mich. Dec. 28, 2016) .......... 4, 5

*In re Automotive Refinishing Paint Antitrust Litig.*,
2008 WL 63269 (E.D. Pa. Jan. 3, 2008) .......... 13

*In Re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) .......... 8, 9

*In re Cardizem*,
218 F.R.D. 508 (E.D. Mich. 2003) .......... 11, 14

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) .......... 13

*In re Copley Pharm., Inc. Albuterol Prods. Liab. Litig.*,
50 F.Supp.2d 1141 (D. Wy. 1999) .......... 13

*In re Delphi Corp. Sec. Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008).......... 5, 8, 11

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) .......... 13

*In re Domestic Drywall Antitrust Litig.*,
2018 WL 3439454 (E.D. Pa. July 17, 2018) .......... 7

*In re Dry Max Pampers Litig.*,
724 F.3d 713 (6th Cir. 2013).......... 15

*In re FAO Inc. Sec. Litig.*,
2005 WL 3801469 (E.D. Pa. May 20, 2005) .......... 7

*In re Fasteners Antitrust Litig.*,
2014 WL 296954 (E.D. Pa. Jan. 27, 2014) .......... 7

*In re Flonase Antitrust Litig.*,
951 F. Supp. 2d 739 (E.D. Pa. 2013) .......... 7

*In re Folding Carton Antitrust Litig.*,
84 F.R.D. 245 (N.D. Ill. 1979) .......... 11

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) .......... 7

*In re Linerboard Antitrust Litig.*,
292 F.Supp.2d 631 (E.D. Pa. 2003) .......... 11

*In re Linerboard Antitrust Litig.*,
2004 WL 1221350 (E.D. Pa. June 2, 2004) .......... 7, 13

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011).......... 5, 8, 10, 11

*In re Polyurethane Foam Antitrust Litig.*,
2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .......... 6, 11

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015).......... 6, 16

*In re Prudential Ins. Co. Amer. Sales Practice Litig. Agent Actions*,
148 F.3d 283.......... 13

*In re Ready-Mixed Concrete Antitrust Litig.*,
2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) ..... 7

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014) ..... 6, 16

*In re Southeastern Milk Antitrust Litig.*,
2013 WL 2155387 (E.D. Tenn. May 17, 2013) ..... 6

*In re Titanium Dioxide Antitrust Litig.*,
2013 WL 6577029 (D. Md. Dec. 13, 2013) ..... 7

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ..... 13

*Isabel v. City of Memphis*,
404 F.3d 404 (6th Cir. 2005) ..... 9

*Jones v. Diamond*,
636 F.2d 1364 (5th Cir. 1981) ..... 10

*Klein v. PDG Remediation, Inc.*,
1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ..... 7

*Lewis v. Wal-Mart Stores, Inc.*,
2006 WL 3505851 (N.D. Okla., Dec. 4, 2006) ..... 7

*Machesney, v. Lar-Bev of Howell, Inc.*,
2017 WL 2437207 (E.D. Mich. Jun. 2017) ..... 15

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ..... 9

*Moore v. United States*,
63 Fed. Cl. 781 (2005) ..... 7

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006) ..... 7

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
483 U.S. 711 (1987) ..... 9

*Rawlings v. Prudential-Bache Properties, Inc.*,
9 F.3d 513 (6th Cir. 1993) ..... 5

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,
825 F.3d 299 (6th Cir. 2016)........................................................................................ 14

*Standard Iron Works v. Arcelormittal*,
2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)................................................................... 7

*Thacker v. Chesapeake Appalachia, L.L.C.*,
695 F. Supp. 2d, 521 (E.D. Ky. 2010)............................................................................ 6

*Williams v. Sprint/United Mgmt. Co*,
2007 WL 2694029 (D. Kan. Sept. 11, 2007) .................................................................. 7

**Statutes**

28 U.S.C. § 1715.............................................................................................................. 2

**Rules**

Fed. R. Civ. P. 23(h) ..................................................................................................... 2, 4

Fed. R. Civ. P. 23(h)(1) and (2) ...................................................................................... 4

## I. INTRODUCTION

Through the efforts of the class representative, VITEC, L.L.C. ("Plaintiff"), and Plaintiff's counsel, settlements totaling $8,455,555 have been reached with Toyoda Gosei and Sumitomo Riko in the *Automotive Hoses* direct purchaser case. In addition, the Toyoda Gosei and Sumitomo Riko settlements included provisions requiring them to cooperate with Plaintiff's counsel in the prosecution of the litigation. Defendants provided cooperation in the form of documents and proffers of information.

The law firms responsible for achieving the settlements respectfully move for an order: (1) awarding attorneys' fees of 30% of the settlement funds; (2) awarding $16,108.68 in litigation costs and expenses that have been incurred in the prosecution of this litigation; and (3) authorizing a service award of $25,000 to the class representative. For the reasons set forth herein, Plaintiff's counsel respectfully submit that the requested fee, expense, and service award are reasonable and fair under both well-established Sixth Circuit precedent concerning such awards in class action litigation and this Court's prior decisions awarding fees, expenses, and service awards in the *Automotive Parts Antitrust Litigation*.

## II. BACKGROUND AND SUMMARY OF WORK PERFORMED TO DATE

The *Automotive Hoses* case is part of the overall *Automotive Parts Antitrust Litigation* that was centralized in this Court by the Judicial Panel on Multidistrict Litigation in 2012. The background of the *Automotive Hoses* case is set forth in the related Memorandum in Support of Direct Purchaser Plaintiff's Motion for Final Approval of Proposed Settlements, which was filed on December 7, 2020, and will not be fully repeated here.

In summary, Plaintiff's counsel has:

- Investigated the industry and drafted the initial complaint against the Defendants;

- Collected, reviewed, and analyzed Plaintiff's documents and business records;
- Participated in proffer and/or cooperation meetings with Defendants' counsel;
- Drafted several discovery orders, including a Protective Order, an Order Regarding Non Discoverability of Certain Expert Materials and Communications, an Order Regarding Production of Electronically Stored Information and Hard Copy Documents, and an Order Regarding Deposition Protocol;
- Reviewed, analyzed, and coded documents obtained from Defendants;
- Engaged in extensive settlement negotiations with each of the Defendants;
- Prepared settlement agreements with each of the Defendants;
- Drafted the settlement notices, orders, and the preliminary and final approval motion and memorandum in support; and
- Worked with the claims administrator to design and disseminate the class notices and a claim form, and to create and maintain a settlement website.

## III. CLASS NOTICE

On November 6, 2020, the Notice of Proposed Settlements of Direct Purchaser Class Action with the Sumitomo Riko and Toyoda Gosei Defendants and Hearing on Settlement Approval and Related Matters, and Claim Form (the "Notice") was mailed to the potential members of the settlement classes. The Notice was also posted on-line at www.autopartsantitrustlitigation.com. On November 16, 2020, a summary notice was published in *Automotive News*, and an Informational Press Release was issued nationwide via PR Newswire's "Auto Wire," which targets auto industry trade publications.[1]

As required by Fed. R. Civ. P. 23(h), the Notice informed the class members that Plaintiff's counsel would request an award of attorneys' fees of up to 30% of the settlement funds and

[1] Counsel for the Toyoda Gosei and Sumitomo Riko Defendants have informed Settlement Class Counsel that their clients fulfilled their obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005" or "CAFA"), by disseminating the requisite notice to the appropriate federal and state officials at least ninety days prior to the final approval hearing.

reimbursement of expenses (Notice at 5). It also explained how class members could exclude themselves or object to the requests. *Id*. at 4-5.

The deadline for objections or requests for exclusion is January 6, 2021. To date, there have been no objections to the settlements, the fee or expense request, or the request for service awards for the class representatives, or any requests for exclusion from any of the settlement classes. Plaintiff's counsel will provide the Court with a final report on any objections or requests for exclusion before the settlement hearing scheduled for February 11, 2021.

## IV. THE WORK PLAINTIFF'S COUNSEL PERFORMED FOR THE BENEFIT OF THE SETTLEMENT CLASSES

In January 2016 and August 2018 respectively, Plaintiff filed class action lawsuits against the Toyoda Gosei and the Sumitomo Riko Defendants[2] on behalf of a class of direct purchasers of Automotive Hoses.[3] In these Complaints, Plaintiff alleged that the Settling Defendants entered into a conspiracy to suppress and eliminate competition for Automotive Hoses by agreeing to rig bids for, and to raise, fix, stabilize, and/or maintain the prices of Automotive Hoses, in violation of federal antitrust laws, and that as a result of the conspiracy, Plaintiff and other direct purchasers of Automotive Hoses were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct. Plaintiff sought recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

After the commencement of the litigation, Plaintiff's counsel received and reviewed electronically stored information, transactional data, and other relevant information about the

[2] *VITEC, L.L.C. v. Toyoda Gosei Co., Ltd.*, 2:16-cv-10001, ECF No. 1 (E.D. Mich. Jan. 1, 2016); *VITEC, L.L.C. v. Sumitomo Riko Co., Ltd.*, 2:18-cv-12711-SFC-RSW, ECF No. 1 (E.D. Mich. Aug. 30, 2018).

[3] For the purposes of these settlements, "Automotive Hoses" means low-pressure rubber hoses used in automobile engine compartments and plastic and resin tubes used in automobile engine compartments and fuel tank modules.

Automotive Hoses conspiracy. Plaintiff's counsel were also exploring settlement possibilities with the Defendants. After months of discussions, the settlement with Toyoda Gosei was reached in November 2018. Following extended discussions, the settlement with Sumitomo Riko was reached in August 2020.

Working with the settlement administrator, Plaintiff's counsel prepared and disseminated notices and claim forms for the settlements. The preliminary and final settlement approval papers were drafted and filed. The final fairness hearing on the settlements and the motion for an award of attorneys' fees, litigation expenses, and a service award to the class representative is scheduled for February 11, 2021.

## V. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." As discussed above, Plaintiff's counsel complied with the requirements of Rule 23(h)(1) and (2) (notice to the class of the attorneys' fees request and an opportunity to object). What remains for the Court to determine is whether the requested fee is reasonable and fair to the class members and Plaintiff's counsel under the circumstances of this case. As discussed below, Plaintiff's counsel's fee request of 30% of the settlement funds in this case is fair and reasonable and well-supported by applicable law.

### A. THE PERCENTAGE-OF-THE-RECOVERY METHOD PREVIOUSLY EMPLOYED BY THE COURT IN THIS MDL IS APPROPRIATE FOR ASSESSING THE FEE REQUEST.

As the Court has previously observed, Sixth Circuit law gives district courts discretion to select an appropriate method for determining the reasonableness of attorneys' fees in class actions. *In re Automotive Parts Antitrust Litig.*, 2016 WL 8201516, at *1 (E.D. Mich. Dec. 28, 2016) (citations omitted). *See generally Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th

Cir. 2016) (discussing the advantages and disadvantages of the two methods). In this MDL, the Court has used the percentage-of-the-fund method. *E.g., In re Automotive Parts Antitrust Litig.*, 2016 WL 8201516, at *1 (collecting cases) (holding that "the percentage-of-the-fund … method of awarding attorneys' fees is preferred in this district because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members"). *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *16 (E.D. Mich. Dec. 13, 2011); *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008). Plaintiff's counsel respectfully request that the Court apply the percentage-of-the-fund method here, as it has in all the other cases.

### B. THE REQUESTED FEE CONSTITUTES A FAIR AND REASONABLE PERCENTAGE OF THE SETTLEMENT FUNDS.

Plaintiff's counsel respectfully request a fee of 30% of the proceeds of the settlement funds that were created by their efforts and will benefit the settlement classes. As detailed below, there is substantial precedent to support the requested fee.

A 30% fee is well within the range of fee awards approved as reasonable by this Court and many others. To date in the *Automotive Parts Litigation*, the Court has approved several fee awards of one-third of the settlement fund in question, finding that percentage to be reasonable. *In re Automotive Parts Antitrust Litig.*, 2016 WL 8201516, at *2 (E.D. Mich. Dec. 28, 2016) (awarding counsel for the Truck and Equipment Dealer Plaintiffs 33.33% of a $4,616,499 settlement fund in the *Wire Harness* and *Occupant Safety Systems* cases); 12-cv-00102-MOB-MKM, Doc. 401 (awarding counsel for the Auto Dealer Plaintiffs 33.33% of a $55,500,504 settlement fund in *Wire Harness*).

The requested 30% award is also consistent with a wealth of authority from courts in the Sixth Circuit (and others) approving class action fees in the range of 30% to one-third of a common fund. *See Bessey v. Packerland Plainwell, Inc*., 2007 WL 3173972, at *4 (W.D. Mich. 2007) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") (internal quotation marks omitted); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d, 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"). District courts in the Sixth Circuit and elsewhere have awarded 30% or more of settlement funds as reasonable attorneys' fees in antitrust cases. For example, this Court recently awarded 30% of the settlement funds in *Ceramic Substrates* to DPP counsel, 2:16-cv-03801-SFC-RSW (July 16, 2020) (ECF No. 19 at 2), and three other cases in the *Automotive Parts* MDL. The Court also awarded 30% of the $30 million in settlement proceeds to plaintiffs' counsel in *In re Refrigerant Compressors Antirust Litig.*, 2:09-md-02042-SFC (June 6, 2014) (ECF No. 496 at 2). Other courts have also awarded fees representing 30% or more of settlement funds. *See, e.g.*, *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (one-third of $19 million fund); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) (one-third of $73 million fund); *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (one-third of $158.6 million fund); *In re Foundry Resins Antitrust Litig.*, Case No. 2:04-md-1638 (S.D. Ohio Mar. 31, 2008) (one-third of $14.1 million fund); *In re Polyurethane Foam Antitrust Litig.*, 2015

WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (30% of a $148.7 million fund). Plaintiff's counsel's fee request of 30% of the settlement funds is fully supported by these and many other decisions.[4]

### C. THE FACTORS IDENTIFIED BY THE SIXTH CIRCUIT SUPPORT THE REQUESTED FEE.

Once the Court has selected a method for awarding attorneys' fees, the next step is to

[4] *See, e.g.*, *In re Domestic Drywall Antitrust Litig.*, 2018 WL 3439454, at *20 (E.D. Pa. July 17, 2018) (awarding one-third of $190 million settlement and $2.95 million in expenses); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666 (N.D. Ill. Jan. 22, 2014) (awarding one-third interim fee from initial settlement in multi-defendant case); *Standard Iron Works v. Arcelormittal,* 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) (attorneys' fee award of one-third of $163.9 million settlement); *In re Fasteners Antitrust Litig.*, 2014 WL 296954, *7 (E.D. Pa. Jan. 27, 2014) ("Co–Lead Counsel's request for one third of the settlement fund is consistent with other direct purchaser antitrust actions."); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (one-third fee from $163.5 million fund); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013) (noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees," and awarding one-third fee from $150 million fund, a 2.99 multiplier); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350 (E.D. Pa. June 2, 2004) (30% of $202 million fund awarded, a 2.66 multiplier); *In re OSB Antitrust Litig.*, Master File No. 06-826 (E.D. Pa.) (fee of one-third of $120 million in settlement funds); *Heekin v. Anthem, Inc.*, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) (awarding one-third fee from $90 million settlement fund); *In re Ready-Mixed Concrete Antitrust Litig.*, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (approving one-third fee); *Williams v. Sprint/United Mgmt. Co,* 2007 WL 2694029, at *6 (D. Kan., Sept. 11, 2007) (awarding fees equal to 35% of $57 million common fund); *Lewis v. Wal-Mart Stores, Inc.*, 2006 WL 3505851, at *1 (N.D. Okla., Dec. 4, 2006) (awarding one-third of the settlement fund and noting that a "one-third [fee] is relatively standard in lawsuits that settle before trial."); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("[A] one-third fee from a common fund case has been found to be typical by several courts.") (citations omitted), *aff'd*, 534 F.3d 508 (6th Cir. 2008); *In re AremisSoft Corp., Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002) ("Scores of cases exist where fees were awarded in the one-third to one-half of the settlement fund.") (citations omitted); *Klein v. PDG Remediation, Inc.*, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999) ("33% of the settlement fund…is within the range of reasonable attorney fees awarded in the Second Circuit"); *Moore v. United States*, 63 Fed. Cl. 781, 787 (2005) ("one-third is a typical recovery"); *In re FAO Inc. Sec. Litig.*, 2005 WL 3801469, at * 2 (E.D. Pa. May 20, 2005) (awarding fees of 30% and 33%); *Godshall v. Franklin Mint Co.*, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (awarding a 33% fee and noting that "[t]he requested percentage is in line with percentages awarded in other cases"); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-44 (E.D. Pa. 2001) (awarding one-third of a $48 million settlement fund).

consider the six factors the Sixth Circuit has identified to guide courts in weighing a fee award in a common fund case, which are: (1) the value of the benefit rendered to the class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *E.g., Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *In re Wire Harness Cases*, 2:12-cv-00101 (E.D. Mich.) (Doc. 495), at 3-5. When applied to the facts of this case, these factors indicate that the requested fee constitutes fair and reasonable compensation for Plaintiff's counsel's efforts in creating the settlement funds.

### 1. PLAINTIFF'S COUNSEL OBTAINED A VALUABLE BENEFIT FOR THE CLASSES.

The result achieved for the class is the principal consideration when evaluating a fee request. *E.g., Delphi,* 248 F.R.D. at 503. Here, Plaintiff's counsel achieved an excellent recovery of $8,455,555 for the settlement classes.

### 2. THE VALUE OF THE SERVICES ON AN HOURLY BASIS CONFIRMS THAT THE REQUESTED FEE IS REASONABLE.

When fees are awarded using the percentage-of-the-fund method, this Court and others have applied a lodestar "cross-check" on the reasonableness of a fee calculated as a percentage of the fund. *In Re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 754 (S.D. Ohio 2007); *In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *18. Use of a lodestar cross-check is optional, however, and because it is only a check, the court is not required to engage in a detailed review and evaluation of time records. *Cardinal*, 528 F. Supp. 2d at 767. Here, the amount of time Plaintiff's counsel have expended in instituting the case and bringing it to a successful conclusion

makes clear that the fee requested is well "aligned with the amount of work the attorneys contributed" to the recovery and does not constitute a "windfall." *See id.*

To calculate the lodestar, a court first multiplies the number of hours counsel reasonably expended on the case by their reasonable hourly rate. *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). Here, as described above, a substantial amount of time has been spent by Plaintiff's counsel litigating the case and achieving the settlements. That work was managed with an eye toward efficiency and avoiding duplication.

As set forth in the law firm Declarations submitted as Exhibit 1 with this motion, Plaintiff's counsel have expended 2,241.6 hours from the inception of the case through November 14, 2020. Applying the historical rates charged by counsel to the hours expended yields a lodestar value of \$1,154,706.25.[5] A 30% fee would be \$2,536,666.50.[6] Without taking into account future work on the case, the current multiplier is 2.19. After the deadline for requests for exclusion, and before the date of the hearing on the fee request, Plaintiff's counsel will file a supplemental report setting forth any opt-outs or objections, the impact of any opt-outs on the settlement amount, an updated lodestar and multiplier that will reflect work done after November 14, 2020.

The hours Plaintiff's counsel expended on this case since inception, while substantial, were reasonable and necessary. One of the recognized benefits of using the percentage-of-the-fund method is that it better aligns the interests of class counsel with the interests of class members and

---

[5] The Supreme Court has held that the use of current rates, as opposed to historical rates, is appropriate to compensate counsel for inflation and the delay in receipt of the funds. *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987). Nevertheless, Plaintiff's counsel have submitted their lodestar information at their lower historical rates, rather than at their current (higher) rates.

[6] The Toyoda Gosei settlement amount is subject to reduction based upon requests for exclusion by members of the Toyoda Gosei Settlement Class. Plaintiff will advise the Court in advance of the Fairness Hearing the impact of any such reduction on the total settlement amount and the amount of fees requested.

eliminates any incentive to unnecessarily expend hours. Here, Plaintiff's counsel efficiently achieved an excellent recovery for the class members without burdening the Court or the parties with unnecessary expenditures of time, effort, or money.

### 3. THE REQUESTED FEE IS FAIR AND REASONABLE GIVEN THE REAL RISK THAT COUNSEL COULD HAVE RECEIVED NO COMPENSATION FOR THEIR EFFORTS.

The Defendants are represented by highly experienced and competent counsel. Absent the settlements, the Defendants and their counsel were prepared to defend this case through trial and appeal. Litigation risk is inherent in every case, and this is particularly true with respect to class actions. Therefore, while the Plaintiff was optimistic about what would be the eventual outcome of this litigation, it must acknowledge the risk that the Defendants could prevail on certain legal or factual issues, which could result in the reduction or elimination of any potential recovery.

The risk factor attempts to compensate class counsel in contingent fee litigation for having taken on the risk of receiving less than their normal hourly rates, or even nothing at all. *See, e.g. Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds*, *Int'l Woodworkers of Am. AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (risk of non-payment a factor supporting the requested fee). When Plaintiff's counsel commenced this case there was a risk that they would recover nothing, or an amount insufficient to support a fee that equaled their lodestar. Therefore, the risk of non-payment is another factor that supports the requested fee. *In re Wire Harness Cases*, 2:12-cv-00101 (E.D. Mich.) (Doc. 495), at 4.

### 4. SOCIETY HAS AN IMPORTANT STAKE IN THIS LAWSUIT AND IN AN AWARD OF REASONABLE ATTORNEYS' FEES.

It is well established that there is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (*e.g.*, the antitrust laws) as well as the specific rights

of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979). Courts in the Sixth Circuit weigh "society's stake in rewarding attorneys who [win favorable outcomes in antitrust class actions] in order to maintain an incentive to others . . . Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee . . . Society also benefits from the prosecution and settlement of private antitrust litigation." *In re Cardizem*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) (internal quotation marks omitted). *Accord*, *Delphi*, 248 F.R.D. at 504.

In this regard, the substantial recovery Plaintiff's counsel have obtained makes it clear that antitrust violations will be the subject of vigorous private civil litigation to deter similar future conduct. Since society gains from competitive markets that are free of collusion, Plaintiff's counsel's work benefitted the public.

**5. THE COMPLEXITY OF THIS CASE SUPPORTS THE REQUESTED FEE.**

The Court is well aware that "[a]ntitrust class actions are inherently complex . . . ." *In re Cardizem*, 218 F.R.D. at 533. *See also In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19; *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.") (citations and internal quotation marks omitted). This case is no exception.

**6. SKILL AND EXPERIENCE OF COUNSEL**

The skill and experience of counsel on both sides of the "v" is another factor that courts may consider in determining a reasonable fee award. *E.g., Polyurethane Foam*, 2015 WL 1639269, at * 7; *Packaged Ice*, 2011 WL 6219188, at *19. The Court appointed four firms with national reputations as leaders in antitrust and other complex litigation: Kohn, Swift & Graf, P.C., Preti,

Flaherty, Beliveau & Pachios, LLP, Freed Kanner London & Millen, LLC, and Spector Roseman & Kodroff, P.C., as Interim Lead Counsel for all the direct purchaser cases. By doing so the Court recognized that they have the requisite skill and experience in class action and antitrust litigation to effectively prosecute these claims. Fink Bressack has ably served as liaison counsel for this and all the direct purchaser cases.

When assessing this factor, courts may also look to the qualifications of the defense counsel opposing the class. Here, the quality of defense counsel is top-notch. Each firm has an excellent reputation in the antitrust bar, significant experience, and extensive resources at its disposal.

But in the final analysis, as more than one court has observed, "[t]he quality of work performed in a case that settles before trial is best measured by the benefit obtained." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir 1990). As explained *supra*, a very substantial cash benefit was obtained for the settlement classes in this case, which provides the principal basis for awarding the attorneys' fees sought by Plaintiff's counsel.

Given the excellent result achieved, the complexity of the claims and defenses, the work performed by Plaintiff's counsel, the real risk of non-recovery (or recovery of less than the amount of the settlement funds), formidable defense counsel, the delay in receipt of payment, the substantial experience and skill of Plaintiff's counsel, the reasonable multiplier on the lodestar, and the societal benefit of this litigation, a 30% attorneys' fee award from the settlement funds would be reasonable compensation for Plaintiff's counsel's work.

## VI. THE COURT SHOULD AUTHORIZE INTERIM LEAD COUNSEL TO DETERMINE FEE ALLOCATIONS.

Plaintiff's counsel worked collectively on this litigation under the supervision of Interim Lead Counsel appointed by the Court. This Court and courts generally have approved joint fee

applications that request a single aggregate fee award, with allocations to specific firms to be determined by the lead counsel, who know the most about the work done by each firm and the relative contribution each firm has made to the success of the litigation.[7] Interim Lead Counsel—Kohn Swift; Preti Flaherty; Freed Kanner; and Spector Roseman—have directed this case from its inception and are best "able to describe the weight and merit of each [counsel's] contribution." *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *17-18 (citation omitted, alteration in original); *see also In re Copley Pharm., Inc. Albuterol Prods. Liab. Litig.*, 50 F.Supp.2d 1141, 1148 (D. Wy. 1999), *aff'd*, 232 F.3d 900 (10th Cir. 2000). From an efficiency standpoint, leaving the allocation in this case to Kohn Swift; Preti Flaherty; Freed Kanner; and Spector Roseman makes good sense because it relieves the Court of the "difficult task of assessing counsels' relative contributions." *In re Prudential Ins. Co. Amer. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 329 n. 96 (3d Cir. 1998); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005) (lead counsel given substantial authority to allocate fees awarded by Court).

Plaintiff's counsel therefore request that the Court (as it has in connection with every other fee award in the direct purchaser cases) approve the aggregate amount of the fees requested, with the specific allocation of the fee among firms to be performed by Interim Lead Counsel. *See Polyurethane Foam*, *supra.* To the extent that there are disputes that cannot be resolved by counsel, the Court would retain the jurisdiction necessary to decide them. *See In re Automotive Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *8 (E.D. Pa. Jan. 3, 2008) (co-lead counsel to allocate fees with the court retaining jurisdiction to address any disputes).

---

[7] *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (noting "the accepted practice of allowing counsel to apportion fees amongst themselves"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357 (N.D. Ga. 1993) ("Ideally, allocation is a private matter to be handled among class counsel").

## VII. REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES INCURRED IN THE PROSECUTION OF THIS LITIGATION

Plaintiff's counsel respectfully request an award of litigation costs and expenses in the amount of $16,108.68, which reflects expenses incurred in the prosecution of this litigation. Expenses for telephone calls, faxes, and internal copying are not included. As the court stated in *In re Cardizem*, "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of this litigation, including expenses incurred in connection with document productions, travel and other litigation-related expenses." 218 F.R.D. at 535.

The out-of-pocket expenses paid or incurred by each law firm are set forth in the Declarations attached as Exhibit 1. These expenses were reasonable and necessary to pursue the case and to obtain the substantial settlements reached in this litigation.

## VIII. A SERVICE AWARD TO THE CLASS REPRESENTATIVE IS APPROPRIATE.

Plaintiff's counsel request that the Court award a $25,000 service payment to the class representative. The Sixth Circuit has noted that such awards may be appropriate under some circumstances. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016); *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003). In surveying decisions from other courts, the Court explained that:

> Numerous courts have authorized incentive awards. These courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class. Yet applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain.

*Hadix v. Johnson*, 322 F.3d at 897 (internal citations omitted).

A service award to the class representative is appropriate here. Plaintiff stepped forward to represent the classes. The case had a successful resolution that will benefit all the class members. This is not a case where the class representative compromised the interests of the class for personal gain. The class representative was not promised a service award. Each settlement was negotiated by Plaintiff's counsel and then presented to the class representative for its review and approval without any discussion of a service award. The prospect of such an award was not a reason why the representative plaintiff approved these settlements. *Hillson v. Kelly Servs. Inc.*, 2017 WL 279814, at *6 (E.D. Mich. 2017). Moreover, this is not a case where the requested service award will dwarf the amounts that class members will receive through the claims process. Some class members may receive hundreds of thousands of dollars.[8]

The class representative devoted a significant amount of time and effort to representing the interests of the class members, including but not limited to the following:

- Assisting counsel in developing an overall understanding of the automotive hoses market;
- Discussing with counsel preservation of electronic and hard-copy documents and taking steps to implement preservation plans;
- Discussing with counsel collecting documents for review and potential production to Defendants;
- Assisting counsel with collecting and analyzing potentially relevant documents;
- Reviewing pleadings and keeping apprised of the status of the litigation; and

[8] In cases where courts have rejected incentive awards, the awards were so disproportionately large relative to the cash benefits to the class that the courts called the class representative's adequacy into question. For example, in *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013), the Court reversed the award of $1,000 payments to the class representatives when class members received "nearly worthless injunctive relief." In *Machesney, v. Lar-Bev of Howell, Inc.*, 2017 WL 2437207, at *11 (E.D. Mich. Jun. 2017), the court did not approve a proposed $15,000 incentive payment because it was "30 times more than the maximum that any class member could receive under the proposed settlement."

- Reviewing the settlements and conferring with counsel to determine whether the settlements were in the best interests of the class.

Finally, a service award of this size or larger is not uncommon in lengthy, highly complex antitrust cases. Indeed, the Court previously approved $50,000 incentive awards to the Class Representatives in *Wire Harness*. 2:12-cv-00101-MOB-MKM Doc # 495, at 6, ¶23. *See also In re Prandin Direct Purchaser Antitrust Litig*., 2015 WL 1396473, at *5 (granting each class representative an award of $50,000); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (same). The class representative here put in great effort and provided commendable service on behalf of the members of the settlement classes to help create $8,455,555 in settlement funds. The requested award of $25,000 is fair to the class representative and the settlement classes and is appropriate under the facts and the law.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for an award of attorneys' fees, litigation costs and expenses, and a service award to the class representative.

Dated: December 7, 2020

Respectfully submitted,

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

Interim Liaison Counsel for the Direct Purchaser Plaintiff

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
& MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
& PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street
Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300

Interim Co-Lead and Settlement Class Counsel for the Direct Purchaser Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2020, I electronically filed the foregoing document with the Clerk of the court using the ECF system, which will send notification of such filing to all counsel of record registered for electronic filing.

/s/ Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500